**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5609-15T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

M.C.,

    Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF D.C., a minor.

_____

        Argued October 31, 2017 – Decided November 6, 2017

        Before Judges Reisner, Gilson and Mayer.

        On appeal from the Superior Court of New
        Jersey, Chancery Division, Family Part, Ocean
        County, Docket No. FG-15-0027-15.

        Charles S. Rosenberg, Designated Counsel,
        argued the cause for appellant (Joseph E.
        Krakora, Public Defender, attorney; Mr.
        Rosenberg, on the brief).

        Amy B. Klauber, Deputy Attorney General,
        argued the cause for respondent (Christopher
        S. Porrino, Attorney General, attorney;

Melissa H. Raksa, Assistant Attorney General, of counsel; Christina Duclos, on the brief.) Todd Wilson, Designated Counsel, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Mr. Wilson, on the brief).

PER CURIAM

Defendant M.C. appeals from a June 3, 2016 order terminating his parental rights to his daughter, D.C., who was born in January 2005. On this appeal, he presents the following points of argument:

> I. [M.C.'s] PARENTAL RIGHTS SHOULD NOT BE TERMINATED BECAUSE THE FINDINGS OF THE TRIAL JUDGE AND THE EVIDENCE ADMITTED AT TRIAL DID NOT SUPPORT A LEGAL CONCLUSION THAT ALL FOUR PRONGS OF THE BEST INTEREST TEST HAD BEEN PROVEN BY CLEAR AND CONVINCING EVIDENCE.
>
> > A. DCPP DID NOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT IT PROVIDED REASONABLE SERVICES TO [M.C.] WITHIN THE MEANING OF N.J.S.A. 30:4C-15.1(a)(3).
> >
> > B. DCPP DID NOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT IT INVESTIGATED PLACEMENT OF [D.C.] WITH RELATIVES AS REQUIRED BY N.J.S.A. 30:4C-15.1(a)(3).
> >
> > C. DCPP DID NOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT TERMINATION WOULD NOT DO MORE HARM THAN GOOD AS REQUIRED BY N.J.S.A. 30:4C-15.1(a)(4).
>
> II. THE JUDGMENT BELOW MUST BE REVERSED BECAUSE OF THE FAILURE OF DCPP AND THE COURT

2

TO COMPLY WITH THE NOTICE REQUIREMENTS OF THE
INDIAN CHILD WELFARE ACT (Not Raised Below).

After reviewing the record, we find that the trial judge's factual findings are supported by substantial credible evidence, and we affirm as to the arguments defendant presents. See N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012). The judge correctly concluded that the Division of Child Protection and Permanency (Division) proved all four prongs of the best interests test, N.J.S.A. 30:4C-15.1(a). However, we order a limited, expedited remand to the trial court, due to post-trial changed circumstances, as discussed in section II below.

I

Before addressing the guardianship trial, we briefly address defendant's Point II. Defendant's argument based on the Indian Child Welfare Act (ICWA), 25 U.S.C.A. §§ 1901-1963, which he raised for the first time on appeal, is without merit. On the record presented to us, there is no legally competent evidence that this child has any Native American ancestry. To the contrary, there is unrebutted sworn evidence that the child has no such ancestry. Notably, on two occasions, the child's mother swore under oath in open court that neither the child nor either parent was a member of, or eligible to be a member of, any Federally-recognized Indian tribe. On the second occasion, when the mother was surrendering

her parental rights in favor of J.M., who was then the child's foster parent, defendant's attorney was present and made no objection. See In re Guardianship of J.O., 327 N.J. Super. 304, 316 (App. Div.), certif. denied, 165 N.J. 492 (2000).

Moreover, while this appeal was pending, the Division moved to supplement the record concerning its post-trial notification to the Bureau of Indian Affairs, pursuant to ICWA. The motion included a certification from a Division worker concerning her efforts to discover whether the family had any Native American heritage. She was unable to contact defendant, however, she interviewed defendant's sister, who stated that the family had no Native American ancestry. In opposing the motion, defendant provided no certification, or even a representation, concerning his purported Native American ancestors and from which tribe he was descended — information the Division would have needed to notify the tribe under ICWA.

On this record, the Division's post-trial notification to the Bureau of Indian Affairs was not required under ICWA, and we need not consider its sufficiency. See J.O., supra, 327 N.J. Super. at 313. Defendant's reliance on New Jersey Division of Child Protection and Permanency v. K.T.D., 439 N.J. Super. 363 (App. Div. 2015), is misplaced. In that case, the parent raised the ICWA issue in the trial court and provided the Division with

sufficient information to file an effective notice under the statute.  Id. at 366, 372.  In this case, defendant's belated and unsupported argument concerning ICWA warrants no further discussion.  R. 2:11-3(e)(1)(E).

## II

Turning to the Title 30 issues, the trial record does not support any of defendant's Point I arguments, and except as addressed herein, they do not warrant discussion.  See R. 2:11-3(e)(1)(E).  We affirm on Points IA and IB substantially for the reasons stated in the trial judge's thorough oral opinion issued on June 3, 2016.  We add these comments.

The evidence is discussed in the judge's opinion and need not be repeated in the same detail here.  To briefly summarize, defendant initially lost contact with the child due to his committing domestic violence against the child's mother. Defendant also had a history of substance abuse.  The record contains reports that he used crack cocaine in front of the child, leading to her ingestion of second-hand crack cocaine smoke.  Even years later, the child told a psychologist that she recalled defendant using drugs in her presence.  She also recounted that defendant told her he would chop her mother up in pieces and break all of her bones.

Defendant failed to cooperate with the drug treatment, domestic violence counseling, parenting training, and other services the Division sought to provide him. He later failed, over a period of several years, to keep in contact with the Division so that the agency could provide him with further services. Defendant lived a transient lifestyle in Staten Island and refused to come to New Jersey, claiming that he was concerned that he would be arrested on outstanding warrants. His one appearance for a court event in this case occurred when he was transported to court from a county jail, where he was incarcerated on drug charges.

The Division made appropriate efforts to place the child with relatives and, in fact, placed her first with a maternal great-aunt and then with a paternal aunt. The paternal aunt initially planned to adopt the child. However, the placement failed, due to the child's conflicts with the aunt's biological children. Defendant did not inform the Division that he had any other relatives who might be willing and able to care for the child. At the time of the 2016 guardianship trial, which he did not attend, defendant had not seen the child since January 2013. Based on the trial record, there is substantial credible evidence to support the trial judge's findings as to the Division's provision of

services to defendant and the agency's efforts to place the child with relatives. See F.M., supra, 211 N.J. at 448.

Based on the trial record, we also reject the arguments set forth in defendant's Point IC, concerning the fourth prong. As previously noted, at the time of the trial, defendant had not visited with the child in more than three years. He also failed to attend three scheduled pre-trial psychological evaluations with Dr. Brandwein, the Division's expert. Dr. Brandwein testified that the child was firmly bonded with her foster mother, J.M., and wanted J.M. to adopt her, a goal J.M. shared. The child, who was then eleven years old, also told both Dr. Brandwein and her Division case worker that she did not want to have contact with defendant. Dr. Brandwein also testified to the severe emotional harm the child would suffer if she were separated from the foster parent.

The trial judge concluded that the Division satisfied the fourth prong and that termination of defendant's parental rights was in the child's best interests. See N.J.S.A. 30:4C-15.1(a)(4) ("[t]ermination of parental rights will not do more harm than good."). The judge also concluded that the child's strong bond with the foster mother was a factor in proving the second prong of the best interests test, although that was not the only basis for her finding that the Division satisfied the second prong. See

N.J.S.A. 30:4C-15.1(a)(2) (harm to the child includes evidence that separating the child from the resource family would cause the child serious and enduring harm). The record amply supports the judge's findings.

However, while this appeal was pending, the Division advised us that the child's pre-adoptive placement with J.M. had fallen through, and the child has now been placed with another foster family, who also wishes to adopt her. In an updated submission, filed at our direction just prior to oral argument, the Division stated that the child's mother, who had surrendered her parental rights in favor of J.M., has now reasserted those rights. As a result, the Division is once again seeking to involuntarily terminate the mother's parental rights, and that litigation is approaching trial.

The trial judge's decision on the fourth prong of the best interests test, and to some extent on the second prong, rested in part on the child's bond with J.M., the foster mother's willingness to adopt her, and the harm that would befall the child if she were separated from J.M. That situation has changed. Additionally, it is now unclear whether the mother will retain her parental rights, voluntarily surrender them in favor of the new foster family, or lose them after a Title 30 trial.

Due to these changed circumstances, we are constrained to remand this case to the trial court for a further hearing as to the child's best interests, related solely to the child's and defendant's current situation. The trial court should consider the child's relationship with her current resource family, her relationship with defendant, his current ability to act as her parent,[1] and whether termination of defendant's parental rights would do more harm than good. Because the child is old enough to express her preferences, the trial court should consider the child's current wishes as to her placement. See N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 112-13 (2008). To be clear, whether the remand is characterized as limited to the fourth prong or to the second and fourth prongs - to the extent they overlap - defendant is not entitled to re-litigate the trial judge's factual findings as to his past conduct or the Division's past conduct.

We order this remand reluctantly, bearing in mind that this child, who is now almost thirteen years old, has suffered enormous trauma in her young life, has been repeatedly moved from one foster home to another, has psychological issues that make it difficult for her to succeed in foster placements, and is greatly in need

---

[1] In his reply brief, defendant represents that he is now clean and sober, has stable housing, and has full-time employment.

of a permanent home.  Therefore, we direct that the proceedings on remand be expedited to the greatest extent possible.

Affirmed in part, remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION